DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Wayne County Children's Services Board ("WCCSB") appeals from a decision of the Wayne County Court of Common Pleas, Juvenile Division, which determined that the court lacked jurisdiction to adjudicate the issue of abuse when the child is deceased. We reverse and remand
 I. {¶ 2} Taylor Darling, born September 1, 2002, was admitted to Children's Medical Center of Akron on November 12, 2002, upon being transported by helicopter from Wooster Community Hospital. Taylor had numerous injuries, including two subdural hematomas, a skull fracture, temporal lobe bruising, bruising on her back, retinal hemorrhages, severe swelling of the brain stem, and swelling and bleeding of the spinal cord. As a result of her injuries, Taylor was place upon life support equipment. Her diagnosis was shaken baby syndrome.
 {¶ 3} WCCSB filed a complaint on November 14, 2002 and asked for temporary custody of Taylor; the court so granted. On November 18, 2002, Taylor's physicians contacted WCCSB and recommended that Taylor be removed from life support. The next day the court held a review of the request and determined that only a probate court could authorize removal of the life support equipment.
 {¶ 4} Taylor's Guardian Ad Litem, Karin Wiest, petitioned the Summit County Probate Court for limited guardianship to determine medical treatment for Taylor. The Probate Court granted the petition and on December 12, 2002, Taylor was removed from life support. She died shortly thereafter.
 {¶ 5} Meanwhile, due to the complex medical issues, the Juvenile Court in Wayne County rescheduled an adjudicatory hearing on WCCSB's complaint, originally set for November 25, 2002, to January 16, 2003. The hearing was again rescheduled to February 11, 2003, at the request of the father, who stated more time was needed to obtain medical evaluations, as well as WCCSB, which needed more time to perfect service on witnesses. On February 6, 2003, the father again requested a continuance. The court granted the continuance, but also set a pretrial for February 10, 2003.
 {¶ 6} At the pretrial, the court determined that the complaint could not be adjudicated within the statutory time frame,[1] requiring WCCSB to dismiss and re-file the complaint; WCCSB refiled on February 12, 2002. A new adjudication date was set for May 8 and 9, 2003; however, on March 18, 2003, upon the court's own motion, the court set a hearing on the issue of jurisdiction. At that hearing, held on April 15, 2003, the parties agreed to brief the issue.
 {¶ 7} In its brief, WCCSB argued that the Wayne County Juvenile Court had exclusive jurisdiction concerning any child alleged to be abused, neglected or dependent when the child lived or was abused in Wayne County, both of which applied to Taylor. WCCSB further claimed that when the Summit County Probate Court accepted limited jurisdiction to appoint a guardian for medical issues, that action did not divest the juvenile court of its jurisdiction. Finally, WCCSB argued that Taylor's death did not divest the juvenile court of jurisdiction because R.C.2151.031(C) defines an "abused child" as a child who "[e]xhibits evidence of any physical * * * injury or death, inflicted other than by accidental means, or an injury or death which is at variance with the history given of it."
 {¶ 8} Wiest, the Guardian Ad Litem, made the same arguments, but added that under R.C. 2151.23(A)(1) the juvenile court has exclusive original jurisdiction "[c]oncerning any child who on or about the date specified in the complaint * * * is alleged * * * to be * * * [an] abused, neglected, or dependent child." Therefore, Wiest stated, the jurisdiction question relates back to the date in the complaint. Further, Wiest argued, that Taylor's death does not preclude an adjudication, because the cause of death was alleged abuse and her status as an abused child has implications for the protection of future children who may be born to or reside within Taylor's family.
 {¶ 9} Taylor's parents responded with a joint brief wherein they argued that the Summit County Probate Court divested the juvenile court of jurisdiction when it appointed a guardian, because R.C. 2151.23(A)(2) precludes juvenile court jurisdiction if the child is a ward of another court. Further, they argue that the probate court found Taylor to be a resident of Summit County and therefore she was not a resident of Wayne County.
 {¶ 10} WCCSB and Wiest replied that the parents' arguments lack merit due to the limited jurisdiction of the probate court, and that court's ruling that "[t]he Juvenile Court and this Court do not have concurrent and coextensive subject-matter jurisdiction over the matters now before this Court." Further, Wiest argued that, residency notwithstanding, jurisdiction was proper in Wayne County as the site of the abuse.
 {¶ 11} The juvenile court order raised three issues for determination: does the court have jurisdiction to proceed with adjudication of alleged abuse when the child is deceased; did the court lose jurisdiction when the Summit County Probate Court appointed a guardian; and did the court lose jurisdiction when WCCSB dismissed the complaint and filed a new complaint subsequent to the death of the child? The court concluded that "nothing within the action of the Probate Court of Summit County * * * deprived this Court of jurisdiction to hear the Complaint concerning alleged abuse." The court further determined that "it does not appear to be an accident on the part of the legislature that a complaint concerning a deceased child is permitted" when it defined an abused child in R.C. 2151.031(C). The court thus concluded that "the dismissal and refilling of the complaint does not divest jurisdiction of this Court to conduct an adjudicatory hearing." The court then opined that following an adjudication of abuse, the court was required to determine disposition, something possible only with a live child. The court continued, stating that:
"there is nothing the Court is being asked to do, or can do at adjudication, other than to determine whether the child is abused or not. * * *. In the case where there is a sibling in the home, there might be a reason to find this child to be abused as a requirement to finding a sibling dependent. But, there are no siblings of this child. This Court finds that this Court does not have jurisdiction to conduct an adjudicatory hearing for this deceased child."
 {¶ 12} WCCSB timely appealed, raising one assignment of error.
 II. Assignment of Error
"the trial court erred as a matter of law in ruling that it lacked jurisdiction to adjudicate an abuse complaint where the child is deceased."
 {¶ 13} In its assignment of error, WCCSB argues that the relevant statutes do not restrict jurisdiction to children who are viable at the date of the adjudication on a complaint for abuse, neglect, or dependency, and this argument is supported by the definition of an abused child contained in R.C. 2151.031(C). Further, WCCSB claims, Taylor was a live child at the time the complaint was filed and her subsequent death does not affect jurisdiction. In reply, Taylor's parents filed separate briefs, both making the same argument: the disposition of an abuse adjudication requires a live child, else the juvenile court is "functionless." Therefore, "[b]ecause Taylor Darling is no longer living, and she has no other sibling, there is no role for or purpose to be served by the continued intervention by the Wayne County Juvenile Court."
 {¶ 14} Subject-matter jurisdiction of a court connotes the power to hear and decide a case upon its merits. Morrison v. Steiner (1972),32 Ohio St.2d 86, 87. Subject-matter jurisdiction defines the competency of a court to render a valid judgment in a particular action. Id. In the civil context, the standard applied is whether an allegation is raised on any cause of action cognizable by the court. State v. Swiger (1998),125 Ohio App.3d 456, 462. Further, subject-matter jurisdiction encompasses the court's authority to determine a specific case within that class of cases that is within its subject matter jurisdiction. Id.
 {¶ 15} R.C. 2151.23 does not limit the juvenile court to deciding only particular aspects of a juvenile's case, or in any way restrict its jurisdiction, other than by limiting the court to dealing with juveniles. J.P. v. Desanti (C.A. 6, 1981), 653 F.2d 1080-1084. R.C. 2151 shall be construed liberally to ensure that the judicial procedures in R.C. 2151 and 2152 are executed and enforced. R.C. 2151.01.
 {¶ 16} The definition of an "abused child" includes any child who exhibits evidence of any physical injury or death, inflicted other than by accidental means, or an injury or death which is at variance with the history given of it. R.C. 2151.031(C). A juvenile court has exclusive original jurisdiction concerning any child who on or about the date specified in the complaint is alleged to be abused, neglected, or dependent. R.C. 2151.23(A)(1).
"If the court at the adjudicatory hearing finds from clear and convincing evidence that the child is an abused, neglected, or dependent child, the court shall proceed * * * to hold a dispositional hearing and hear the evidence as to the proper disposition to be made under [R.C.2151.353]." R.C. 2151.35(A)(1).
 {¶ 17} "After the conclusion of the dispositional hearing, the court shall enter an appropriate judgment and * * * may make any order of disposition that is set forth in [R.C. 2151.353]." R.C. 2151.35(B)(3). Those dispositions, briefly, include protective supervision, a grant of temporary custody, an award of legal custody, placement in a planned permanent living arrangement, an order to remove an abuser or an abuse enabler from the child's home, and an order to any person to refrain from contact with the child or the child's siblings. R.C. 2151.353(A).
 {¶ 18} The problem, from the trial court's view, is that a dispositional hearing is required following an adjudication of abuse. Therefore, if the adjudication goes forth, a dispositional hearing must occur and the court must apply one of the statutory dispositions named in R.C. 2151.353. In the case of a deceased child with no siblings, the imposition of the specified dispositions is not possible.
 {¶ 19} However, the rule has been stated frequently and clearly: "In statutory construction, the word `may' shall be construed as permissive and the word `shall' shall be construed as mandatory unless there appears a clear and unequivocal legislative intent that they receive a construction other than their ordinary usage." Department ofLiquor Control v. Sons of Italy Lodge 0917 (1992), 65 Ohio St.3d 532,534, citing Dorrian v. Scioto Conservancy Dist. (1971), 27 Ohio St.2d 102, paragraph one of the syllabus. Therefore, we do not agree that the terms of the statute provide the only dispositions that the trial court can render. The legislature, in offering the dispositions, was ensuring the juvenile court and alerting the public that the court has extensive power to safeguard the child in question. In the unusual circumstances of this case, the court is free to enter an appropriate disposition, so long as the disposition is not contrary to the rights afforded the parties under R.C. 2151.
 {¶ 20} Further, we believe that the statute was not intended to be worded such that the protective measures of R.C. 2151 could not be enacted in certain cases. Unquestionably, the legislature intended to protect siblings of an abused child, and has extended that protection to any child who may be residing with the abused child's family. This is evident from the definition of "dependent child" and the factors for consideration in determining the best interests of a child:
"As used in this chapter, `dependent child' means any child:
"* * *
"(D) To whom both of the following apply:
"(1) The child is residing in a household in which a parent, guardian, custodian, or other member of the household committed an act that was the basis for an adjudication that a sibling of the child or any other child who resides in the household is an abused, neglected, or dependent child.
"(2) Because of the circumstances surrounding the abuse, neglect, or dependency of the sibling or other child and the other conditions in the household of the child, the child is in danger of being abused or neglected by that parent, guardian, custodian, or member of the household." R.C. 2151.04.
 {¶ 21} R.C. 2151.414 states:
"(D) In determining the best interest of a child at a hearing held pursuant to [a motion for permanent custody], the court shall consider all relevant factors, including, but not limited to the following:
"* * *
"(5) Whether any of the factors in [R.C. 2151.414(E)(7) to (11)] apply in relation to the parents and child."
 {¶ 22} R.C. 2151.414(E)(7) to (11) provide as follows:
"(7) The parent has been convicted of or pleaded guilty to one of the following:
"* * *
"(d) An offense under section * * * 2907.04 * * * of the Revised Code [involuntary manslaughter] * * * and the victim of the offense is the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense[.]"
 {¶ 23} These sections of the statute are to be read in pari materia with the whole of the chapter. Statutory enactments that relate to the same general subject matter must be read in pari materia. United Tel.Co. of Ohio v. Limbach (1994), 71 Ohio St.3d 369, 372. When doing so, it is apparent that the legislature intended to trigger comprehensive protection to siblings when a child is found to be abused.
 {¶ 24} The statutory protections afforded siblings extends to afterborn children. "The unfitness of a parent, guardian or custodian can be predicted by past history. The child does not first have to be put into a particular environment before the court can determine that that environment is unhealthy or unsafe." In re Bishop (1987),36 Ohio App.3d 123, at paragraph four of the syllabus. "We acknowledge the dangers of dependency proceedings involving newborn children" Id., at 124. However, the legislature has chosen to permit intervention at this early stage and a juvenile court is not required to experiment with the health and safety of a newborn where the state can show, by clear and convincing evidence, that the child's safety and health are at risk. Id.
 {¶ 25} The denial of jurisdiction under these facts amounts to judicial and legislative permission to seek custody of the future siblings of an abused child, unless the perpetrator has the foresight to abuse the child to the point of death. This is contrary to the spirit of the law. Taylor's status as an abuse victim has profound implications for the future of her family and the children within that family. We cannot find that the technicality of Taylor's death would rob those children of the protection afforded them in R.C. 2151, simply because Taylor was an only child at the time of her death.
 {¶ 26} WCCSB's assignment of error is sustained.
 III. {¶ 27} WCCSB's assignment of error is sustained. The judgment of the Wayne County Court of Common Pleas, Juvenile Division is reversed and the cause remanded.
Judgment reversed and the cause remanded.
Donna J. Carr for the court.
Carr, J., and Whitmore, J. Concurs.
[1] R.C. 2151.28(A) states in pertinent part:
"(2) If the complaint alleged that the child is an abused, neglected, or dependent child, the adjudicatory hearing shall be held no later than thirty days after the complaint is filed, except that, for good cause shown, the court may continue the adjudicatory hearing for either of the following periods of time:
"* * *.
"(b) For a reasonable period of time beyond the thirty-day deadline to obtain service on all parties or any necessary evaluation, except that the adjudicatory hearing shall not be held later than sixty days after the date on which the complaint was filed."